Hon. Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In Re:<br><br>BRYAN BELL<br><br>Debtor | USDC Case No.    C07-1500 TSZ |
| BRYAN BELL,<br><br>            Plaintiff-Appellant<br><br>vs.<br><br>AURORA LOAN SERVICES, PLAZA HOME MORTGAGE, CAL-WESTERN RECONVEYANCE CORPORATION OF WASHINGTON; and, RODNEY DANZ and JENNIFER DANZ,<br><br>            Defendants-Appellees | Bankruptcy Appeal No.: 07-S022<br><br>Bankruptcy No.:    07-10717-KAO<br><br>Adversary No.: A07-01140-KAO<br><br><br>BRIEF OF APPELLEES<br>RODNEY AND JENNIFER DANZ |

Brief of Appellees

**JAMES E. DICKMEYER, PC**
903 Fifth Avenue   Suite 106
Kirkland, Washington  98033
(425) 889-2324

## TABLE OF CONTENTS

Introduction …………………………………………………………………………..1

Statement of Applicable Standard of Appellate Review ……………………............1

Nature of the Case …………………………………………………………….............2

Disposition in the Court Below ……………………………………………………….2

Statement of Facts Relevant to Issues Presented for Review …..…………………….2

Statement of Issues Presented for Review …..………………………….............4

Argument

    A. The Nonjudicial Foreclosure Sale was Properly Conducted ………............4

        1. Bell was in default when the sale was conducted ………………….5

        2. Proper notice of continuance of the foreclosure sale was given ……7

        3. The foreclosure sale was not held prematurely ……………………..8

    B. The Property was Not Property of Bell's Bankruptcy Estate ………………9

Conclusion ………………………………………………………….………………..14

## TABLE OF AUTHORITIES

Butner v. United States, 440 U.S. 48, 55 (1979) …………………………………………...13

Celotex Corp. v. Catrett, 477 U.S. 317, 91 L.Ed. 2d 265, 106 S.Ct. 2548 (1986) …………..1

Cox v. Helenius, 103 Wn. 2d 383, 693 P.2d 683 (1985) …………………………………...8

Curl v. Federal Savings and Loan Association, 241 Ga. 29, 244 SE 2d, 812 (1978) ………6

In re Engles, 193 BR 23 (S.D. Cal., 1996) ……..………………………………………….14

Enlow v. Salem-Keizer Yellow Cab Co., 371 F.3d 645 (9th Cir., 2004) …………………….1

In re Garner, 208 BR 698 (N.D., Cal. 1997) ………………………………………………14

Neilson v. United States (In re Olshan), 356 F.3d 1078 (9th Cir., 2004) ……..……………1

In re Estate of O'Brien, 109 Wn.2d 913, 749 P.2d 154 (1988) ……………………………10

Puckett v. Puckett, 29 Wn.2d 15, 185 P.2d 131 (1947) ……..……………………………10

In re Raintree Healthcare Corp., 431 F.3d 685 (9th Cir., 2005) ……………………………1

Staffordshire Investments v. Cal-Western Reconveyance, 209 Or. App. _____,

149 P.3d 150 (2006), http://www.publications.ojd.state.or.us/A121664.htm ………………..………..6

Taylor v. Just, 138 Idaho 137, 59 P.3d 308 (2002) ………………………………………….6

Udall v. T.D. Escrow Services, Inc., 159 Wn.2d. 903, ___ P.3d ___ (2007) ……..10, 11, 12

Udall v. T.D. Escrow Services, Inc., 132 Wash.App. 290, ___. P.3d ___ (2006) …….11, 12

## STATUTES

RCW 61.24.050 ……………………………………………………………..…..10, 11, 13

RCW 61.24.040(6) ………………………………………………………………………..7

California Civil Code §2924h(c) ………………………………………………………..13

11 USC §541 …………………………………………………………………………...14

11 USC §362 ……………………………………………………………………….2, 14

## RULES

F.R.Civ.P. 56(c) …………………………………………………………………………….1

## TREATISES AND OTHER AUTHORITIES

Weaver, 18 Wash. Practice, 2d Ed., §20.14, p.429 ……………………………………….7

## Introduction

The bankruptcy court properly granted summary judgment to Rodney and Jennifer Danz ("Danz"), quieting title in Danz to the real property formerly owned by Bryan Bell ("Bell") located at 33351 177th Pl. SE, Auburn WA 98092 (the "Property"), dismissing Bell's claims that the foreclosure sale of the Property was void and concluding Bell had no interest in the Property when he commenced a Chapter 13 proceeding in the court below. This court should affirm the bankruptcy court's summary judgment order.

## Statement of Applicable Standard of Appellate Review

A district court reviews *de novo* a bankruptcy court's decision to grant summary judgment. Neilson v. United States (In re Olshan), 356 F.3d 1078, 1083 (9th Cir., 2004). See also In re Raintree Healthcare Corp., 431 F.3d 685 (9th Cir., 2005).

Summary judgment is to be granted if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, show that there is no genuine issue as to a material fact and the moving party is entitled to judgment as a matter of law. F.R.Civ.P. 56(c). The moving party bears the burden to demonstrate there is no genuine issue of material fact and that, as a matter of law, summary judgment is proper. If the moving party satisfies its burden, the nonmoving party must demonstrate by competent evidence the existence of a genuine issue of material fact on an element essential to the nonmoving party's case and on which that party will bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L.Ed. 2d 265, 106 S.Ct. 2548 (1986).

Summary judgment may be affirmed on any ground supported by the record. Enlow v. Salem-Keizer Yellow Cab Co., 371 F.3d 645, 649 (9th Cir., 2004).

## Nature of the Case

Bell appeals a summary judgment order declaring that: (1) the nonjudicial foreclosure of the Property at which Danz was the successful bidder became final before Bell filed his Chapter 13 proceeding; (2) Bell's interest in the Property was conveyed to Danz prepetition; (3) the Property was not property of the bankruptcy estate; (4) the recording of the trustee's deed after Bell filed Chapter 13 did not violate the automatic stay of 11 USC §362; and (5) quieting title in the Property in Danz superior to the claim of Bell and anyone claiming through Bell.

Bell contends the nonjudicial foreclosure sale was void for several reasons: (1) absence of default on the sale date; (2) inadequate notice of the sale date; (3) a premature sale date; and (4) the trustee's deed was recorded after Bell filed Chapter 13.

## Disposition in the Court Below

In general, Danz does not dispute Bell's statement of procedural history in the court below. Brief of Appellant/Debtor, pp. 6-7. However, it may be more accurate to state that in the bankruptcy court Bell commenced an adversary proceeding by filing a complaint to void the foreclosure sale of the Property and quiet title in Bell.

## Statement of Facts Relevant to Issues Presented for Review

Bell encumbered the Property with a mortgage in favor of Plaza Mortgage to secure a promissory note in the principal amount of $205,000, serviced by Aurora Lending Services. ROA 1.13 (Exhibit A thereto)[1]. In late 2006, Bell was in arrears on the mortgage and

---

[1] References to the Record on Appeal will correspond by number to the pleadings identified in appellant's Designation of Contents for Inclusion in Record on Appeal and Statement of Issues on Appeal.

Brief of Appellees - 2

**JAMES E. DICKMEYER, PC**
903 Fifth Avenue   Suite 106
Kirkland, Washington  98033
(425) 889-2324

foreclosure proceedings were commenced. ROA 1.17, ¶ 3. On or about September 22, 2006, Cal-Western Reconveyance Corporation of Washington ("Cal-Western"), the successor trustee of the deed of trust, after more than thirty days from issuance and posting of a notice of default, recorded a Notice of Trustee's Sale of the Property with the King County Auditor. ROA 1.12. Sale was originally scheduled for December 22, 2006. ROA 1.8 (Exhibit A thereto).

On or about December 20, 2006 Bell and Aurora entered into a Special Forbearance Agreement (the "Forbearance Agreement"). ROA 1.13 (Exhibit B thereto). The Forbearance Agreement recites that Bell had arrears of $14,603.49 from May 1, 2006 to December 20, 2006. ROA 1.13 (Exhibit B thereto). The Forbearance Agreement required Bell to pay $7500 by December 20, 2006 (which he paid) and to make regular monthly payments thereafter of $3555 beginning on or before January 20, 2007 and continuing through April 20, 2007. ROA 1.13 (Exhibit B thereto). Paragraph 3.c of the Forbearance Agreement states that there are no grace periods on the payments due thereunder. ROA 1.13 (Exhibit B thereto). The Forbearance Agreement in section 6 states that if Bell breaches the Forbearance Agreement the foreclosure could commence or continue "from the point at which it was placed on hold without further notice." ROA 1.13 (Exhibit B thereto).

Cal-Western continued the original trustee sale to December 29, 2006 and then again to February 2, 2007 by public proclamation. ROA 1.12. Bell breached the Forbearance Agreement by paying the January installment late. He purchased a cashier's check on January 25, 2007 in the amount of $3555. ROA 1.13 (Exhibit C thereto). Bell sent the late payment to Aurora, which later refunded such payment to Bell. ROA 1.17.

On February 2, 2007, Cal-Western conducted the trustee's sale at the place and time

previously proclaimed. ROA 1.12. Equity Partners Northwest Funding, LLC ("EPNF"), acting as agent for Danz, bid $243,200 for the Property. Cal-Western accepted the bid and concluded the sale. ROA 1.6 (Exhibit A thereto). Cal-Western accepted payment of $245,000 from EPNF on Danz behalf at the sale. ROA 1.6 (Exhibit A). On February 20, 2007 Cal-Western issued to Danz a trustee's deed dated February 2, 2007.[2] ROA 1.12, ¶ 8.

On February 20, 2007 Cal-Western sent the acknowledged trustee's deed to EPNF. ROA 1.12 (Exhibit A thereto). The deed was hand-delivered on February 21, 2007 to Danz' counsel, who then sent the deed by Title Delivery Service to Old Republic Title to be recorded with the county auditor. ROA 1.7.

On February 22, 2007 Bell filed his Chapter 13 proceeding. The trustee's deed was recorded February 23, 2007. ROA 1.8.

## Statement of Issues Presented for Review

1. Are there genuine issues of material fact that the nonjudicial foreclosure sale of the Property is void?

2. Are there genuine issues of material fact whether the Property is property of the bankruptcy estate?

## Argument

**A. The Nonjudicial Foreclosure Sale was Properly Conducted**

Bell contends the nonjudicial foreclosure sale is void for three principal reasons: (1) he was not in default and the foreclosure sale should not have taken place; (2) if he was in default,

---

[2] The deed named as grantees Danz and EPNF "for security purposes only." The import of this qualifying language was addressed in the court below and is not an issue presented for review.

Brief of Appellees - 4

**JAMES E. DICKMEYER, PC**
903 Fifth Avenue   Suite 106
Kirkland, Washington  98033
(425) 889-2324

he was not properly notified of the continued foreclosure sale date; and (3) the foreclosure sale was conducted too soon after Bell defaulted under the Forbearance Agreement.

Bell produced no evidence of the existence of a genuine issue of material fact that the foreclosure sale was defective. Bell was in default, received proper notice and the sale was conducted properly.

### 1. Bell was in default when the foreclosure sale was conducted

The Forbearance Agreement acknowledges Bell was in default and provided him a framework to reinstate the note and cure the default over a period of time; however, the Forbearance Agreement did not, by its terms or mere adoption, cure the default.

In the Forbearance Agreement Bell admitted being in default, committed to a payment schedule that provided no grace period for payments and acknowledged that a breach of the payment schedule permitted the foreclosure to go forward without further notice to him. Paragraph 6 of the Forbearance Agreement explicitly provides for resumption of the foreclosure if Bell breached the payment schedule. Bell failed to comply with specific and unambiguous provisions of the Forbearance Agreement requiring him to pay $3555 by January 20. Instead, Bell purchased a $3555 cashier's check five days late on January 25, 2007 and sent it to the lender.

Nothing in the Forbearance Agreement supports Bell's assertion that the Forbearance Agreement cured the default or that the lender was required to restart foreclosure proceedings if Bell missed a payment. In fact, the Forbearance Agreement expressly provides to the contrary. Bell failed to make the January payment timely. Aurora was authorized by the Forbearance Agreement and applicable law to instruct Cal-Western to proceed with the sale on

February 2.

The Forbearance Agreement was not a comprehensive loan modification. The Forbearance Agreement effected only a limited and narrow modification and only as to a schedule for paying the arrears. The Forbearance Agreement did not cure the default – it only provided a method for curing the default. Bell's claim the default was cured in December 2006 is completely unsupported.

This case is distinguishable on the facts from the Oregon, Idaho and Georgia cases Bell cites. In Taylor v. Just, 138 Idaho 137, 59 P.3d 308 (2002) that court found the terms of the forbearance agreement in fact cured the default and that no default existed on the sale date that authorized the power of sale. In Staffordshire Investments v. Cal-Western Reconveyance, 209 Or. App. _____, 149 P. 3d. 150 (2006), http://www.publications.ojd.state.or.us/A121664.htm, the court determined the borrower had been in compliance with the forbearance agreement, which did not cure the default, at the time of sale; hence, the sale was not authorized. In Curl v. Federal Savings and Loan Association, 241 Ga. 29, 244 SE 2d, 812 (1978), the court reversed a summary judgment order and remanded for trial the homeowner's claim that the lender's practice of accepting late payments and reinstating the loan on prior occasions created a "quasi new agreement to work out defaults without foreclosure." The court noted it was expressing no opinion on the merits of the homeowner's claim. The court simply held the homeowner was entitled to a trial of his claims.

The common thread between these cases is that the terms of a forbearance or loan modification agreement between the borrower and lender can determine the lender's right to commence or conclude foreclosure. In this case, the Forbearance Agreement defines the rights

and duties of Bell and Aurora. If Bell made the specified payments timely, Aurora would have had to forbear from foreclosing. If Bell paid late, Aurora could foreclose.

**2. Proper notice of continuance of the foreclosure sale was given**

Bell contends he should have been given written notice of continuance of the foreclosure sale. Neither applicable law nor the written instruments between the parties supports his argument.

Paragraph 15 of the deed of trust requires all notices given by "Borrower or Lender in connection with this Security Instrument" to be in writing. This written notice requirement does not apply to the trustee, who is obligated to follow the statutory duties of a trustee. Under RCW 61.24.040(6) a trustee may continue the sale by a public proclamation at the time and place fixed for sale in the notice of sale. No other notice is required. Written notice of a continuance is permitted but not required. Cal-Western continued the sale by public proclamation as authorized by law.

The sale is not void because the trustee complied with the law. The sale is not void because the trustee did not give written notice of continuance when it was under no obligation to do so. Bell's argument he was entitled to written notice of the continued sale date is without merit.

Regardless of the claimed or perceived inadequacy of continuances by public proclamation, RCW 61.24.040(6) allows sales to be continued in this manner. If the law permits notice of continuances to be given orally, then no other notice is required. Weaver, 18 Wash. Practice, 2d Ed., §20.14, p.429. The Forbearance Agreement did not require additional notice to Bell from either Aurora or Cal-Western; in fact, the Forbearance Agreement expressly

permitted the foreclosure sale to proceed without further notice to Bell if he failed to abide by its terms.

Cox v. Helenius, 103 Wn. 2d 383, 693 P.2d 683 (1985) is inapposite to this case. Cal-Western owed Bell the duty to comply with its obligations under the deed of trust, to satisfy the duties of a trustee under the law and to act impartially. There is no evidence it failed to do so. Cal-Western was not obligated to ensure Bell was protecting his own interests. Cal-Western did not lead Bell to believe anything one way or another with respect to the sale. Bell's communications and dealings were solely with Aurora, with which he had just signed the Forbearance Agreement that permitted completion of the foreclosure without notice if Bell failed to make payment timely.

Bell's claim he was entitled to written notice is essentially a policy argument. Policy preferences aside, Bell acknowledges he mistakenly assumed if he was late on a payment he would have received a phone call or letter so he could promptly make a payment. ROA 1.17, ¶11. Bell did not read the Forbearance Agreement closely enough to understand he had no grace period and that foreclosure could resume if he missed a payment.

The statutory allowance of oral proclamations of continuances necessarily requires the grantor of a deed of trust to take some responsibility to ensure his interests are being protected. Bell could have communicated with Cal-Western to ascertain the status of the sale. He did not do so.

**3. The foreclosure sale was not held prematurely**

Bell's argument the foreclosure sale was held prematurely rests on his contention the Forbearance Agreement cured his default and that his late January payment was a new default

Brief of Appellees - 8

that required Aurora to begin foreclosure anew. Because the Forbearance Agreement by its terms did not cure Bell's default but provided only a schedule for curing the arrearage and authorized resumption of the foreclosure if Bell breached, Bell's argument fails. If Bell had made timely all payments required by the Forbearance Agreement he would have cured the default. The default that gave rise to the foreclosure continued through to the date of sale. Bell has produced no evidence the default was cured prior to the foreclosure sale.

Even when viewed in the light most favorable to the nonmoving party, the record demonstrates the mortgage was in default when the sale was conducted, and Bell was additionally in default of the arrangement by which he could have brought the mortgage current and saved the Property from foreclosure.

Bell has brought forward no facts that would establish the existence of a genuine issue of material fact that the foreclosure sale of the Property is void. Bell produces no evidence of any wrongful act, statement or representation by anyone at Aurora or Cal-Western that led him to his detriment to act or refrain from acting. Instead, Bell relies on his declaration that he believed the foreclosure was cancelled, that he was back on track with his lender and assumed he would be contacted by the lender if he missed a payment. ROA 1.17, ¶ ¶ 3, 11.

The foreclosure of the property was properly commenced, continued and finally conducted after Bell breached the Forbearance Agreement. By his own admission Bell failed to read the Forbearance Agreement closely enough to appreciate fully what he needed to do to save the Property. His failure to heed his obligations should not be cause to void the foreclosure.

**B. The Property was Not Property of Bell's Bankruptcy Estate**

Bell argues the foreclosure sale was not final when he filed for Chapter 13 relief because the trustee's deed had not been recorded within fifteen days after conclusion of the foreclosure sale. Consequently, Bell asserts, he retained an interest in the Property as of the Chapter 13 petition date and the Property was property of the bankruptcy estate.

Danz contends that under Washington law the delivery of the trustee's deed on February 20 divested Bell of title to the Property before Bell filed his Chapter 13 on February 22. Therefore, the Property never became property of Bell's bankruptcy estate.

RCW 61.24.050 provides:

> When delivered to the purchaser, the trustee's deed shall convey all of the right, title, and interest in the real and personal property sold at the trustee's sale which the grantor had or had the power to convey at the time of the execution of the deed of trust, and such as the grantor may have thereafter acquired. If the trustee accepts a bid, then the trustee's sale is final as of the date and time of such acceptance if the trustee's deed is recorded within fifteen days thereafter. After a trustee's sale, no person shall have any right, by statute or otherwise, to redeem the property sold at the trustee's sale

Bell contends that despite the prepetition delivery of the deed and the explicit preclusion of redemption rights in RCW 61.24.050, the sale never became final and is therefore void. Under a plain reading of RCW 61.24.050, the other sections of RCW 61.24 and <u>Udall v. T.D. Escrow Services, Inc.</u>, 159 Wn.2d. 903, ___ P.3d ___ (2007), this argument fails.

Cal-Western delivered the deed to Danz' agent on February 20, two days before filing. "Delivery" is a term of art that connotes more than a mere physical transfer of a written instrument. Delivery requires not only execution of the deed but also a present intent to transfer title. <u>In re Estate of O'Brien</u>, 109 Wn.2d 913, 918, 749 P.2d 154 (1988). No particular form of delivery is required to effect a conveyance. Acts or words or both may suffice so long as there

is a clear intent to transfer title. Puckett v. Puckett, 29 Wn.2d 15, 18, 185 P.2d 131 (1947).

Cal-Western "delivered" the deed to Danz when the trustee's deed was executed, acknowledged and placed for physical delivery to Danz' agent. At that point Cal-Western relinquished any claim to "seisin," recognized Danz as owner and intended to transfer ownership. Delivery of the trustee's deed having occurred prior to the petition, Danz was then the owner of all right, title and interest formerly held by Bell in the Property. RCW 61.24.050. Delay in recording the deed does not negate the legal effect of delivery, and a bankruptcy filing alone does not restore an ownership interest that has been lost.

Bell seizes on the single "relation back" sentence of RCW 61.24.050 to support his claim that he held an ownership interest in the Property on the petition date. The Washington Supreme Court in Udall rejected similar parsing of RCW 61.24.050 engaged in by the Court of Appeals in Udall v. T.D. Escrow Services, Inc., 132 Wash.App. 290, 298, ___ P.3d ___ (2006). The Washington Supreme Court in Udall interpreted RCW 61.24.050 to give effect to the entire section and its place in the statutory scheme, not just to its individual components. The court took a broad view of the entire statute and its intended operation. The court held that a bid at a trustee's sale is an offer the trustee can accept or reject. If the trustee accepts the bid, the trustee is obligated to convey the deed when the bid is paid absent some procedural irregularity that voids the sale. Udall, 159 Wn.2d at 912. Delivery of the deed cannot be withheld at the trustee's discretion. Delivery is merely a ministerial act the trustee can be compelled to perform when the accepted bid is paid.

In the view of the Washington Supreme Court, the foreclosure process is fairly straightforward and uncomplicated: a sale at auction, a payment of the price bid and the trustee

executes the deed to the purchaser "*at which time* all of the 'right, title and interest' in the property is conveyed." Udall, 159 Wn.2d at 911 (emphasis in original).

If no person including the deed of trust grantor has redemption rights after a trustee's sale, and if a trustee is mandated to deliver a deed upon acceptance of the bid and satisfaction of any attendant conditions, then the sale is concluded and final when the trustee in fact delivers, or can be compelled to deliver, a trustee's deed.

The Supreme Court in Udall did not discuss the 15-day relation back period mentioned in RCW 61.24.050 that Bell claims conditions absolute finality to a trustee's sale, probably because addressing that issue was unnecessary to disposition of the case. The Court of Appeals in Udall, 132 Wash.App. at 298, simply noted that the finality accorded by the 15-day recording period language referred only to "establishing the date and finality of sale which become operative retrospectively only if the deed is recorded within 15 days after this final sale date."

The Court of Appeals in Udall was asked to decide if a foreclosure sale is valid only if the deed is recorded and delivered. 132 Wash.App at 297. The Court of Appeals held that the failure to record the deed within 15 days of the sale "merely precludes establishing a final sale date." 132 Wash.App. at 299. It further held the recording requirement is irrelevant to the conveyance of property rights. 132 Wash.App. at 300. Neither the Court of Appeals nor the Supreme Court held that failure to record the trustee's deed within 15 days of the sale date renders the sale void.

By the reasoning of either the Court of Appeals or the Supreme Court in Udall, Danz acquired Bell's right, title and interest in the Property before the Chapter 13 was filed. Under

the Court of Appeals' analysis, Danz acquired ownership rights in the Property when the trustee's deed was delivered to him on February 20. Under the Supreme Court's view, Danz became the owner when Cal-Western accepted his bid and any conditions to the acceptance had been satisfied.

Bell's argument that he retains an interest in the property notwithstanding delivery of the trustee's deed places far too much weight on the single sentence in RCW 61.24.050 that mentions the fifteen day recording window.

Accepting Bell's argument requires this court to read into the statute provisions that are not there; namely, that a sale is not final if the trustee's deed is not recorded within fifteen days after sale; that the failure to record the deed within the relation back period voids the sale; that failure to record the deed within the relation back period provides the grantor with redemption rights the statute specifically denies.

Whether a debtor has an interest in property is determined by state law. <u>Butner v. United States</u>, 440 U.S. 48, 55 (1979). Washington law provides that in a regularly conducted nonjudicial foreclosure sale, once the trustee accepts a bid the trustee is mandated to deliver to the purchaser the deed that conveys the grantor's right, title and interest in the property. State law further provides that delivery of the deed transfers the right, title and interest of the grantor to the grantee.

California's relation back statute is not germane. Washington law applies here and is substantively different from California law. Section 2924h(c) of the California Civil Code specifies a trustee's sale is final upon acceptance of the last and highest bid and " … shall be deemed perfected as of 8 a.m. on the actual date of sale if the trustee's deed is recorded within

15 calendar days after the sale…." Washington's statute does not address perfection. In any event, courts interpreting this statute have concluded that a trustee's sale will be considered final even if the trustee's deed is not recorded within fifteen days after the sale. See, e.g., In re Garner, 208 BR 698 (N.D. Cal., 1997) ; In re Engles, 193 BR 23, 27 (S.D. Cal., 1996).

11 USC §541(a)(1) provides that, with certain specified exceptions, the estate consists of all legal or equitable interests of the debtor in property as of the commencement of the case. Bell did not have a legal or equitable interest in the Property as of the commencement of his Chapter 13. The recording of the deed itself effected no transfer of ownership rights. The prepetition execution and delivery of the trustee's deed divested Bell of his ownership interest in the Property. Bell has no redemption rights or other legal grounds upon which to regain ownership. Since Bell had no legal or equitable interest in the property on February 22, the Property is not property of the estate under 11 USC §541.

Since the Property is not property of the estate, the recording of the deed did not violate the automatic stay of 11 USC §362. The stay prohibits postpetition action against a debtor on account of a prepetition claim (Danz had no prepetition claim against the debtor) and action to obtain possession of or exercise control over property of the estate. Since Bell had no interest in the Property as of the petition date, Danz' postpetition deed recording was not action against property of the estate.

## Conclusion

Bell defaulted on his mortgage and negotiated the Forbearance Agreement to give himself time to cure the default. He breached the Forbearance Agreement, permitting his lender to proceed with a foreclosure sale. Danz submitted the high bid that was accepted by the

trustee, who executed and delivered a trustee's deed prepetition to the successful bidder. The trustee's sale was final, and Bell was divested of his interest in the Property, before his Chapter 13 was filed. The Property was not property of the bankruptcy estate created when Bell filed his Chapter 13.

Bell has come forward with no evidence that would establish the existence of a genuine issue of material fact requiring trial of his claims to void the foreclosure sale and quiet title to the Property. The order of the bankruptcy court order granting Danz summary judgment should be affirmed.

DATED this 16th day of January, 2008

James E. Dickmeyer, PC

By /s/ *James E. Dickmeyer*
James E. Dickmeyer  WSBA #14318
Attorney for Appellees
Rodney Danz and Jennifer Danz