UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| In re Bryan Bell, <br>                        Debtor. <br> _____ <br> BRYAN BELL, <br>                        Plaintiff/Appellant, <br> v. <br> AURORA LOAN SERVICES, et al., <br>                        Defendants/Appellees. | No. C07-1500Z <br><br> ORDER |

This matter comes before the Court on Plaintiff/Appellant Bryan Bell's appeal under 28 U.S.C. § 158(a) or (b) from Bankruptcy Judge Thomas Glover's Order Granting Summary Judgment entered in the Adversary Proceeding No. 07-01140-KAO. Having considered the briefs and the record on appeal, the Court now enters the following Order affirming summary judgment in favor of Defendants/Appellees.

**I.  Procedural History**

On February 22, 2007, Bryan Bell filed a Chapter 13 bankruptcy proceeding. Bankruptcy Case No. 07-10717-KAO, docket no. 1 (Chapter 13 Voluntary Petition).  On

ORDER  1–

March 16, 2007, the purchasers of Bell's house, Rodney and Jennifer Danz ("Danz"), moved for relief from an automatic stay. Bankruptcy Case No. 07-10717-KAO, docket no. 17 (Motion for Relief from Stay). On April 2, 2007, Bell moved to invalidate the foreclosure sale. Bankruptcy Case No. 07-10717-KAO, docket no. 19 (Motion to Void Non-Judicial Foreclosure Sale). On April 26, 2007, by letter ruling, the Honorable Karen A. Overstreet denied both motions and held that "[t]his issue falls squarely within the parameters of Bankruptcy Rule 7001 and should be the subject of an adversary proceeding." Record on Appeal ("ROA")[1] 1.32 (Letter Ruling) at 3.

On May 18, 2007, Bell filed an adversary complaint to invalidate the non-judicial foreclosure. ROA 1.2 (Amended Compl.). On July 3, 2007, Danz moved for summary judgment. ROA 1.5 (Mot. for Summ. J.). On August 20, 2007, the Honorable Thomas Glover granted Danz's Motion for Summary Judgment. ROA 1.23 (Order Granting Summary Judgment). On August 27, 2007, Bell filed a Notice of Appeal under 28 U.S.C. § 158(a) or (b) from Judge Glover's Order Granting Summary Judgment entered in the Adversary Proceeding No. 07-01140-KAO. ROA 1.24 (Notice of Appeal).

## II.  **Standard of Review**

A district court reviews *de novo* a bankruptcy court's decision to grant summary judgment. Neilson v. United States (In re Olshan), 356 F.3d 1078, 1083 (9th Cir. 2004); see also In re Raintree Healthcare Corp., 431 F.3d 685, 687 (9th Cir. 2005). The Court must grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A fact is material if it might affect the outcome

---

[1] The Record on Appeal ("ROA") corresponds to the designated numbers in the Designation of Contents for Inclusion in Record on Appeal, Case No. 07-1500-TSZ, docket no. 5-2. The documents for inclusion on appeal come from two proceedings, the Bankruptcy Case No. 07-10717-KAO (also referred to by the parties as the "Chapter 13" case) and the Adversary Case No. 07-01140-KAO.

ORDER  2–

of the suit under the governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In support of its motion for summary judgment, the moving party need not negate the opponent's claim, Celotex, 477 U.S. at 323; rather, the moving party will be entitled to judgment if the evidence is not sufficient for a jury to return a verdict in favor of the opponent.  Anderson, 477 U.S. at 249.

### III.   Facts

Bryan Bell had a home mortgage with Plaza Home Mortgage, serviced by Aurora Loan Services ("Aurora").  ROA 1.17 (Bell Decl.) ¶ 3.  In 2006, Bell's mortgage was in arrears and foreclosure proceedings commenced.  ROA 1.13 (Bershas Decl.) ¶ 5.  On or about August 22, 2006, the trustee of the deed, Cal-Western Reconveyance Corporation ("Cal-Western"), issued a Notice of Default to Bell.  ROA 1.13 (Bershas Decl.) ¶¶ 4-5.  When the default cited therein was not cured, Cal-Western prepared, recorded and served on Bell a Notice of Trustee's Sale, scheduling the sale for December 22, 2006.  ROA 1.13 (Bershas Decl.) ¶ 5.

On or about December 20, 2006, Bell and Aurora entered into a Special Forbearance Agreement.  ROA 1.13 (Bershas Decl.) ¶ 6, Ex. B (Forbearance Agreement).  The Forbearance Agreement states that Bell had arrears of $14,603.49, accumulated from May 1, 2006 to December 20, 2006.  ROA 1.13 (Bershas Decl.) ¶ 6, Ex. B (Forbearance Agreement) at 1.  The Forbearance Agreement required Bell to make an initial payment of $7,500 on the date it was signed and subsequent elevated monthly payments until the arrears were satisfied.  (Bershas Decl.) ¶ 6, Ex. B (Forbearance Agreement) at 2, ¶ 3b.  Bell made the initial $7,500 payment when he returned the signed document.  ROA 1.17 (Bell Decl.) ¶¶ 3-4.

Despite the fact that the foreclosure sale was postponed by the Forbearance Agreement, Cal-Western "continued" the trustee's sale originally scheduled for December 22, 2006, to December 29, 2006, by oral "public proclamation" at the time and place fixed

ORDER   3–

for the trustee's sale; Cal-Western subsequently continued the trustee's sale from December 29, 2006, to February 2, 2007. ROA 1.12 (Womack Decl.) ¶ 5; ROA 1.13 (Bershas Decl.) ¶ 9. A written notice of the changes to the original sale date was not sent to Bell; Bell did not know that the sale date was being changed by "oral proclamation." ROA 1.17 (Bell Decl.) ¶ 7.

The Forbearance Agreement required Bell to pay $3,555 for each of the four months after execution; the first monthly payment was due on January 20, 2007. ROA 1.13 (Bershas Decl.) ¶ 6, Ex. B (Forbearance Agreement) at 2, ¶ 3c. On January 25, 2007, Bell sent in a cashier's check; as such, his first monthly payment was five days late. ROA 1.13 (Bershas Decl.) ¶ 11, Ex. C (Bell's Cashier's Check for $3,555 dated on January 25, 2007). Aurora subsequently returned the cashier's check to Bell with a letter dated January 29, 2007; the letter stated that the check ". . . is not sufficient to bring this loan current and we do not have arrangements with you to bring your loan current." ROA 1.13 (Bershas Decl.) ¶ 12, Ex. D (Letter from Aurora) at 1. The letter and returned check did not reach Bell until February 20, 2007. ROA 1.17 (Bell Decl.) ¶ 7.

On February 2, 2007, Cal-Western conducted the trustee's sale. ROA 1.13 (Bershas Decl.) ¶ 13. Equity Partners Northwest Funding, LLC ("EPNF"), acting as agent for buyer Danz, submitted the highest bid of $243,200.00. Id. Cal-Western accepted the bid. ROA 1.6 (R. Danz Decl.) at 2, Ex. A (Acceptance of Bid). The deed was delivered to EPNF on February 21, 2007. ROA 1.7 (Walker Decl.) at 2:6-11; ROA 1.13 (Bershas Decl.) ¶ 15. The next day, on February 22, 2007, Bell filed for bankruptcy. Bankruptcy Case No. 07-10717-KAO (Chapter 13 Voluntary Petition). On February 22, 2007, Bell's counsel, David A. Leen, notified Jennifer Danz of Bell's bankruptcy case. ROA 1.15 (Leen Decl.) ¶ 1; ROA 1.17 (Bell Decl.) ¶ 9. On February 23, 2007, the deed was recorded under Rod and Jennifer

ORDER   4–

Danz's names. ROA 1.8 (Dickmeyer Decl.) ¶ D, Ex. D (Recordation); ROA 1.13 (Bershas Decl.) ¶ 14.

## IV. Discussion

Bell argues that the foreclosure sale was invalid. Failure to follow the mandatory requirements of the Washington Deeds of Trust Act and/or breaching a fiduciary duty may result in a void sale. Cox v. Helenius, 103 Wn.2d 383, 388-390 (1985). If a sale is void, the sale is set aside even if there is a bona fide purchaser. Id. Bell advances a variety of theories for invalidating the foreclosure: (A) the trustee breached express written terms of the Deed of Trust; (B) Bell was not in default at the time of the sale; (C) the sale was held before a mandatory delay required by the Washington Deeds of Trust Act; (D) the the Washington Deeds of Trust Act requires a written notice before a sale; and (E) Bell still had an interest in the property on the day he filed for bankruptcy.

### A. Did the Trustee Breach the Written Terms of Notice Required by the Deed of Trust?

Bell argues that the trustee breached express written terms of the Deed of Trust. The Deed of Trust provides that "*[a]ll notices* given by Borrower *or Lender* in connection with this Security Instrument *must be in writing*." ROA 1.13 (Bershas Decl.) ¶ 3, Ex. A (Deed of Trust) at 11, ¶ 15 (emphasis added). The parties do not dispute Bell's assertion that he did not receive a written notice of the final auction date of Bell's home. ROA 1.17 (Bell Decl.) ¶ 7. Bell argues that the lack of written notice was a violation of paragraph 15 of the Deed of Trust. Paragraph 15 of the Deed of Trust only requires a written notice by the *lender*; the Deed is silent as to any written notice requirement by the *trustee*. Because it was the trustee who sold the home, the trustee did not violate Paragraph 15 of the Deed of Trust by not giving Bell written notice.

Bell also argues that the trustee was acting as the agent of the lender; as such, Bell reasons that the trustee was also bound by the written notice requirement in Paragraph 15 of

ORDER 5–

the Deed of Trust.  Danz did not directly address this argument.  See Appellee's Brief, docket no. 8, at 7:8-15.  However, Paragraph 22 of the Deed of Trust authorizes the trustee to postpone a sale by oral "public announcement":

> ". . . Trustee may postpone sale of the Property for a period or periods permitted by Applicable Law *by public announcement at the time and place fixed in the notice of sale*."

ROA 1.13 (Bershas Decl.) ¶ 3, Ex. A (Deed of Trust) at 14, ¶ 22 (emphasis added).

Because the Deed of Trust allows the trustee to postpone a sale by "public announcement," the actions of the trustee, Cal-Western, were within the explicit language specified by the Deed of Trust.  Reconciling Paragraph 22 (allowing public announcements by the trustee) with Paragraph 15 (requiring written notices by the lender) would not be possible if the trustee were to be bound to the same notice requirements as the lender.  The Court holds that the Deed of Trust did not require the trustee, Cal-Western, to send a written notice to Bell regarding the postponements of the sale.

**B.     Was Bell in Default When the Non-Judicial Sale Occurred?**

Bell argues that he was not in default at the time of the trustee's sale.  A non-judicial sale may only occur after the borrower has defaulted.  See RCW 61.24.040.  Bell argues that he was not in default when the foreclosure sale occurred as the lender had accepted the first two payments under the Forbearance Agreement.

Danz makes two arguments in response.  First, Danz argues that Bell was in default of the mortgage at the time the Forbearance Agreement was signed because executing the Forbearance Agreement did not cure the default.  The Forbearance Agreement, Danz argues, merely provided a means by which the default could be cured.  There are several sections of the Forbearance Agreement that support the view that Bell's default in the mortgage still existed when the Forbearance Agreement was signed.  The Forbearance Agreement provides, in pertinent part:

ORDER   6–

> "WHEREAS, Borrower(s) *are in default* in the payment of monthly installments of principal, interest, escrow and other payments . . ."
>
> * * *
>
> "3d.  By executing and paying under the terms of this Agreement, your delinquent arrearage *will be brought current*."
>
> * * *
>
> "6.  <u>Status of Default.</u>  The Borrower(s) have been notified of the default.  All of the provisions of the Note and/or Security Instrument previously executed, and amendments thereto, if any, *shall remain in full force and effect*, except as specifically modified by the terms of this Agreement."
>
> * * *
>
> "11.  <u>Reinstatement.</u>  *In the event Borrower(s) cure the arrearage* by making all the payments required under this Agreement, . . ."

ROA 1.13 (Bershas Decl.) ¶ 6, Ex. B (Forbearance Agreement) at 1-4, ¶ 3d, ¶ 6, ¶ 11 (emphasis added).

Second, Danz argues that in addition to being in default of the mortgage, Bell was in default of the Forbearance Agreement at the time of the foreclosure sale.  The Forbearance Agreement required the first monthly payment on January 20, 2007.  ROA 1.13 (Bershas Decl.) ¶ 6, Ex. B (Forbearance Agreement) at 2, ¶ 3c.  Bell sent a check for the first month's payment five days late, on January 25, 2007.  Thus, Bell was in default of the payments due under the Forbearance Agreement at the time of the foreclosure sale on February 2, 2007.  That Bell did not receive the returned check until February 20, 2007, i.e., after the foreclosure sale, does not change the fact that Bell was late with the payment.

For these reasons, the Court holds that Bell was in a state of default when the sale occurred on February 2, 2007.

**C.    Was the Foreclosure Sale Held Prematurely?**

Bell argues that the sale was held before a mandatory delay required by statute.  The Washington Deeds of Trust Act provides, in pertinent part: "The sale as authorized under

ORDER  7–

this chapter shall not take place *less than one hundred ninety days from the date of default* in any of the obligations secured." RCW 61.24.040(8) (emphasis added).

In support of the argument that the sale was held prematurely, Bell relies on a declaration containing an attorney's opinion. Appellant's Brief, docket no. 7, at 16:17-26 (citing ROA 1.16 (Henry Decl.) ¶ 3B). The attorney opined:

> "*Assuming the Bell's were current on their financial obligations when they entered into the loan modification agreement*, the Trustee conducting the sale less than 2 months later made the sale premature in violation of RCW 61.24.040 ("sale shall not take place less than 190 days from the date of default . . .").

ROA 1.16 (Henry Decl.) ¶ 3B (emphasis added). The attorney's opinion is not valid evidence because it is a legal conclusion, nor is it a persuasive legal opinion because it is based on an erroneous assumption that "the Bell's were current on their financial obligations when they entered into the loan modification agreement." The Court has concluded, in Section B of this Order, that Bell was in default at the time the parties executed the Forbearance Agreement on December 20, 2006.

The Forbearance Agreement documented that Bell was in default, starting in May 2006. ROA 1.13 (Bershas Decl.) ¶ 6, Ex. B (Forbearance Agreement) at 1. Because the foreclosure sale occurred on February 2, 2007, the sale occurred more than 190 days from the date of Bell's first default. The Court holds that the trustee's sale was conducted in compliance with RCW 61.24.040(8).

**D. Was the Non-Judicial Sale Void for Lack of a Written Notice Required by Either Statute or the Common Law?**

**1. Is a Sale Void under the Washington Deeds of Trust Act Because It Was Postponed By Oral Notice?**

Bell argues that the Washington Deeds of Trust Act requires a written notice before a sale. The Washington Deeds of Trust Act sets forth the form in which the notice of a non-judicial sale must occur. See, e.g., RCW 61.24.040(e) (providing that a trustee must "[c]ause a copy of the notice of sale described in RCW 61.24.040(1)(f) to be posted in a conspicuous

ORDER   8–

place on the property, or in lieu of posting, cause a copy of said notice to be served upon any occupant of the property"). At a date uncertain, but between August 22, 2006 and December 20, 2006, the trustee, Cal-Western, served a Notice of Trustee's Sale on Bell, scheduling the trustee's sale for December 22, 2006. ROA 1.13 (Bershas Decl.) ¶ 5.

Once a written notice has been sent regarding the first date of sale, the Washington Deeds of Trust Act authorizes a trustee to continue a foreclosure sale by "public proclamation:"

> (6) The trustee may for any cause the trustee deems advantageous, ***continue the sale for a period or periods not exceeding a total of one hundred twenty days by a public proclamation at the time and place fixed for sale in the notice of sale*** or, alternatively, by giving notice of the time and place of the postponed sale in the manner and to the persons specified in RCW 61.24.040(1) (b), (c), (d), and (e) and publishing a copy of such notice once in the newspaper(s) described in RCW 61.24.040(3), more than seven days before the date fixed for sale in the notice of sale. No other notice of the postponed sale need be given.

RCW 61.24.040(6) (emphasis added). In the present case, the trustee twice continued the sale, for less than a total of one hundred twenty days, by public proclamation at the time and place fixed for sale in the notice of sale. ROA 1.12 (Womack Decl.) ¶ 5; ROA 1.13 (Bershas Decl.) ¶ 9. The Court holds that Cal-Western's public proclamations continuing the trustee's sale complied with the Washington Deeds of Trust Act.[2]

**2.  Was the Foreclosure Sale Void Because the Trustee Instilled a Sense of Reliance or Because a Quasi Agreement Between Bell and the Lender Tolerated Late Payments?**

Bell argues that written notice, beyond any statutory requirements, must be given by the trustee if the trustee instills reliance on the borrower. In Cox v. Helenius, the

---

[2] The Court notes that in addition to the Washington Deeds of Trust Act, the Forbearance Agreement specifies that the lender may continue the foreclosure proceedings if there was a missed payment with out any notice to Bell: "***If any payment required under the terms of this Agreement is not made on the date required***, the Lender may terminate this Agreement ***without any notice to the Borrower(s)***, . . . , ***may commence/continue the foreclosure proceedings*** according to the terms of the Note and/or Security Instrument, . . ." ROA 1.13 (Bershas Decl.) ¶ 6, Ex. B (Forbearance Agreement) at 3, ¶ 6 (emphasis added).

ORDER 9–

1  Washington Supreme Court stated that "after a trustee undertakes a course of conduct
2  reasonably calculated to instill a sense of reliance thereon by the grantor, that course of
3  conduct may not be abandoned without notice to the grantor." Cox v. Helenius, 103 Wn.2d
4  383, 389-90 (1985) (citing Lupertino v. Carbahal, 35 Cal.App.3d 742 (1973)).  In Cox, the
5  trustee sold the property even though the trustee was aware that the debtor had initiated a
6  legal proceeding. Cox, 103 Wn.2d at 386.  In contrast, in the present case, Bell did not file
7  for bankruptcy until after the sale had taken place.  ROA 1.6 (R. Danz Decl.) at 2, Ex. A
8  (Acceptance of Bid on Feb. 2, 2007); Bankruptcy Case No. 07-10717-KAO, docket no. 1
9  (Chapter 13 Voluntary Petition filed Feb. 22, 2007).  Bell also relies on an Oregon case in
10 which the state appellate court held against the trustee at issue in our case, Cal-Western,
11 because the foreclosure sale occurred just after a forbearance agreement was signed.  See
12 Staffordshire Invs. v. Cal-Western Reconveyance, 209 Or. App. 528, 149 P.3d 150 (2006).
13 In Staffordshire Investments, the court determined that the debtor was in compliance with the
14 terms of the forbearance agreement when the sale took place. Id., 209 Or.App. at 540.  In
15 contrast, in the present case, Bell was not in compliance with the Forbearance Agreement
16 when the sale took place because he was five days late with the first monthly payment.  The
17 terms of the Forbearance Agreement spell out that "[t]ime is of the essence" and that "[t]here
18 are no grace period [sic] as to any of the obligations."  ROA 1.13 (Bershas Decl.) ¶ 6, Ex. B
19 (Forbearance Agreement) at 3, ¶ 13.  Bell has failed to show that trustee Cal-Western
20 instilled in Bell a sense of reliance by conducting the sale on February 2, 2007.

21      Bell also argues that a new quasi agreement may be in place if the debtor is relying on
22 behavior from the lender.  In a Georgia case relied upon by Bell, the lender had a practice of
23 accepting late payments and reinstating the loan, a practice that created a new quasi
24 agreement. Curl v. Fed. Savs. & Loan Ass'n, 241 Ga. 29, 30, 244 S.E.2d 812 (1978).  In
25 contrast, in the present case, the Forbearance Agreement was executed in writing; it was not
26 a quasi agreement based on oral conversation or conduct.  Under its terms, there was no

ORDER  10–

provision for late payment.  When Bell was late with the first monthly payment due under the Forbearance Agreement, Aurora did not accept his check, but rather returned it.[3]  ROA 1.13 (Bershas Decl.) ¶ 12, Ex. D (Letter from Aurora).  In another case relied upon by Bell, the Idaho Supreme Court held that a debtor was entitled to written notice before foreclosure because a new forbearance agreement that had been signed by the debtor had cured the default.  Taylor v. Just, 138 Idaho 137, 141, 59 P.3d 308 (2002).  In Taylor, the court found that the terms of the forbearance agreement cured the default, and so the court determined that a new notice was required.  Taylor, 138 Idaho at 141.  In contrast, in the present case, Bell remained in a state of default when the parties executed the Forbearance Agreement, and that agreement did not cure the state of default.

The Court holds that there is no evidence of a quasi agreement or other conduct by the trustee, Cal-Western, or lender, Aurora, that instilled reliance on the part of the debtor, Bell.

### E.  Did Bell Still Have an Interest in the Property on the Day He Filed for Bankruptcy?

Bell argues that he had an interest in the property on the day he filed for bankruptcy.  Federal bankruptcy law provides, in pertinent part:

> (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate.  ***Such estate is comprised of all the following property, wherever located and by whomever held:***
>
> > (1) Except as provided in subsections (b) and (c)(2) of this section, ***all legal or equitable interests of the debtor in property as of the commencement of the case***.

11 U.S.C. § 541(a)(1) (emphasis added).  Accordingly, if the debtor has "legal or equitable interests" on the day of filing for bankruptcy, the debtor's interests may become part of the bankruptcy estate.

---

[3] The Court acknowledges that Bell did not receive the letter from Aurora returning the check until February 20, 2007, eighteen days after the trustee's sale, even though the letter was dated January 29, 2007.  ROA 1.17 (Bell Decl.) ¶ 7.

ORDER   11–

In the present case, the sequence and timing of events after the non-judicial sale prove critical. The foreclosure sale occurred on February 2, 2007; the deed was delivered to Danz on February 21, 2007; Bell filed for bankruptcy on February 22, 2007; and on February 23, 2007, the deed was recorded under Rod and Jennifer Danz's names. Bell argues that he still had an interest in the property on the day he filed for bankruptcy because Danz had not yet recorded the deed for the property. Danz responds that Bell was fully divested of his interest on the February 21, 2007 date of delivery of the deed to Danz's agent. Danz argues that the date of recordation of the property is immaterial to whether Danz had received the full interest in the disputed property based on the facts of this case.

The Washington Deeds of Trust Act entitled "Interest conveyed by trustee's deed – Sale is final if acceptance is properly recorded – Redemption precluded after sale," provides:

> ***When delivered to the purchaser,*** the trustee's deed shall convey ***all of the right, title, and interest in the real and personal property sold at the trustee's sale*** which the grantor had or had the power to convey at the time of the execution of the deed of trust, and such as the grantor may have thereafter acquired. ***If the trustee accepts a bid, then the trustee's sale is final as of the date and time of such acceptance if the trustee's deed is recorded within fifteen days thereafter.***

RCW 61.24.050 (emphasis added).

The parties construe RCW 61.24.050 in different ways. Bell argues that the last conditional sentence is a pre-requisite to transfer of ownership interest. Because the deed was recorded twenty-one days after the trustee's sale, and thus was not recorded within the fifteen-day period set forth in RCW 61.24.050, Bell argues the sale is void. Bell relies on dicta from a bankruptcy case interpreting a California statute, CAL. CIV. CODE § 2924h(c), similar to RCW 61.24.050, in which the Bankruptcy Judge stated that "[r]ecordation of the deed within fifteen days of the sale appears critical." In re Garner, 208 B.R. 698, 701 (Bankr. N.D. Cal. 1997). In Garner, the sequence of events was similar to the pattern below:

    Day 1: Foreclosure Sale of Deed of Trust to Buyer
    Day 2: Debtor files for bankruptcy

ORDER   12–

        Day 3: Deed delivered to Buyer
        Day 7: Deed is recorded

Id. at 699. Thus, in Garner, delivery of the deed occurred after the debtor had filed for bankruptcy, and the only way the buyer could claim a valid sale was to "relate back" the transaction to the sale date. For that reason, in Garner, the recordation of the deed was "critical." In contrast, in the present case, the deed was delivered to Danz before Bell filed for bankruptcy, so Danz does not need to take advantage of any relation back rule.[4]

        In construing RCW 61.24.050, Danz emphasizes the first sentence, which, by its plain language, provides that the interest in the real property is conveyed to the purchaser when the trustee's deed is delivered to the purchaser. See Udall v. T.D. Escrow Servs., Inc., 132 Wn.App. 290 (2006) (rev'd on other grounds, Udall v. T.D. Escrow Servs., Inc., 159 Wn.2d 903, 911 (2007) ("The trustee's delivery of the deed to the purchaser is a ministerial act, symbolizing conveyance of property rights to the purchaser.")). Danz then argues that the last conditional sentence of RCW 61.24.050 merely provides a mechanism by which the sale date *may* be "related back" in time if the deed is recorded within 15 days of the sale. The Washington Court of Appeals in Udall rejected a construction of RCW 61.24.050 that would have *required* a deed to be delivered *and* recorded in order for an interest to be transferred. See Udall, 132 Wn.App. at 299 (holding that under the Washington Deeds of Trust Act, "(1) delivery of the trustee's deed is necessary to convey rights in real property sold during a statutory nonjudicial foreclosure sale of property; and (2) failure to record the deed within 15 days of the sale merely precludes establishing a final sale date"). The Udall court explained that the purpose of recording "is to place subsequent purchasers on notice of property's transfer from one owner to another, not to convey rights in land to the purchaser." Id.

---

[4] If delivery of the deed to Danz had occurred after the bankruptcy filing, Bell would be right in asserting that the Danz's interest in the property would not pre-date the bankruptcy filing because Danz waited longer than the fifteen-day statutory period to record the deed.

ORDER 13–

In this present case, delivery of the deed to the purchaser, Danz, occurred on February 21, 2007, before the bankruptcy filing on February 22, 2007.  Accordingly, the interest in the property was conveyed to Danz prior to Bell's filing for bankruptcy.  The Court holds that Bell no longer had an interest in the property when Bell filed for bankruptcy, and the property did not pass to the bankruptcy estate.

**V.     Conclusion**

The Court AFFIRMS Bankruptcy Judge Thomas Glover's Order Granting Summary Judgment, ROA 1.23, entered as docket no. 44 in the Adversary Proceeding No. 07-01140-KAO.

IT IS SO ORDERED.

DATED this 3rd day of March, 2008.

Thomas S. Zilly
United States District Judge

ORDER   14–